(27 Misc. Rep. 669.)

HOSMER v. CITY OF GLOVERSVILLE.

(Supreme Court, Trial Term, Fulton County. June, 1899.)

1. MUNICIPAL CORPORATIONS—STREETS—CHANGE OF GRADE—DAMAGES.
  A person whose property abuts on a town road, the grade of which has been established for a long time, is not entitled to compensation for damages occasioned by changing its grade to conform to a grade fixed by the council after it becomes a part of a city by reason of the extension of its limits, under the charter of the city of Gloversville (Laws 1890, c. 55), which provides that when the grade of any street has been established, and a record made thereof, and such street graded accordingly, the grade of such street shall not be changed without compensation to the property owners injured by the grading.

2. SAME—ESTABLISHED GRADE.
  A resolution of a city council requiring sidewalks to be laid along several of its streets, including one named, that was, prior to its incorporation into the municipality, by reason of the extension of the city limit a town road, "in accordance with the grades now established or to be established" for said streets, where the city did not build the walks or give the owners notice to do so, is not a recognition of an established grade on such street.

3. SAME—RESOLUTION OF COUNCIL.
  The passage of a motion by the common council that the grade of a street as shown in a profile map presented therewith be adopted is a sufficient establishment of the grade of a street to give abutting owners notice thereof.

Action by Julia A. Hosmer against the city of Gloversville to recover damages for changing grade of street. Dismissed.

Edgar A. Spencer, for plaintiff.
Frank Talbot, for defendant.

KELLOGG, J.   The facts in this case are all agreed upon, and the principles of law applicable are clear and well understood.   They have been declared repeatedly and without refining distinctions by the courts.   Under such conditions, to one who can think clear and see straight, the conclusion should be easily reached, and yet the case has its difficulties.   These arise in the application of the recognized principles to facts novel and somewhat complicated.   It is conceded that, "Except as some statute may provide for compensation to an abutting owner whose land is injured by a change in the grade of a street, lawfully made, he is without remedy, and, however serious his damages may be, he can receive no compensation" (Earl, J., in Folmsbee v. City of Amsterdam, 142 N. Y. 122, 36 N. E. 821); and both parties admit the correctness of the principle and how it obtains, as expressed by Finch, J., in Conklin v. Railway Co., 102 N. Y. 111, 6 N. E. 663:

"But it remained unchanged as the public highway originally laid out in everything but its grade.   If it became such by dedication, compensation for the easement was expressly waived.   If taken by right of eminent domain, the compensation paid covered all the damages sustained, among which were necessarily embraced such as might flow from a change of grade required for the public use and convenience.   That might be altered by any lawful authority, and whatever injury or inconvenience should result to the abutting owner was either waived by the dedication or paid for by the original compensation, so that a change of grade upon a highway invades no private right. * * * Beyond a doubt, any change of grade by the authorities charged with the public duty of working and maintaining the highway, however it may inconvenience the abutting owner, takes from him no property right for which he has not been compensated."

As this is applied to the public highway known as "Kingsboro Avenue," it must be clear that, until some municipality took control of it, no abutting owner could complain of a change of grade made by any authorized highway official for the public convenience; and equally clear that, if there does now exist, or has ever existed, any limitation to the right or power of the municipality after taking control, it must be found in the charter of that municipality; and, such limitation being in derogation of common-law rights, and, in effect, to confer property rights upon the individual citizen at the expense of the public, if expressed in the charter, should be strictly construed.   This so-called "Kingsboro Avenue" has been a country road and public highway for 100 years, and the dwelling house of plaintiff, on her land abutting on the east side of this highway, has been there for 50 years.   During all this time the owners have possessed no such property right in the highway which would entitle them to compensation had the cutting down in front of the premises been made as now complained of.   In 1873, by special charter (Laws 1873, c. 505), the village of Gloversville was incorporated, and its easterly bounds are then declared to be "along the Kingsboro road."   This is conceded to mean that the easterly limits were the center of this road now called "Kingsboro Avenue."   The plaintiff's land, all lying on the easterly side of this road, was none of it included within the limits of the village of Gloversville, and she takes nothing through the provisions of that charter.   For the same reason—the fact that the center line of this road was the village

line—the road, as such, never came as a whole within the village jurisdiction for the purpose of establishing a grade. It had no such authority over it as would permit the village to "establish" a grade. As to all the streets in the village, it had the power to establish a grade either by formal resolution or by such official recognition and user as shown in Folmsbee v. City of Amsterdam, 142 N. Y. 118, 36 N. E. 821; but, for lack of jurisdiction this power could not be exercised over the Kingsboro road, and never was attempted to be exercised. The fact that the village made connections with this road, at its original grade, through various village streets, must be taken as a necessity, and not as an official establishment of a grade. They could not do otherwise than they did. In 1890 the city of Gloversville was incorporated by special charter (Laws 1890, c. 55), and the Kingsboro road and plaintiff's premises were included within the boundaries of the city. This, I think, must be taken as the first statutory provision giving new rights to the plaintiff touching the Kingsboro road. For the first time this road came through this charter, under municipal control, and to this we must look for the limitation, if any, which gives to plaintiff new property rights in the highway. The language of this limitation is this:

"When the grade of any street, or any part thereof, has been established and a record made thereof, and such street or part thereof graded accordingly, the grade of such street or part thereof shall not be changed and graded according to the changed grade, except upon petition of a majority of the lineal feet fronting on the street, or the parts thereof, to be graded, nor unless compensation be made to the owners of the property injured by the regrading."

It will be observed that this language materially differs from the language used in the charter of the city of Amsterdam, under consideration in the Folmsbee Case. Here the grade must not only be "established," but a "record thereof" must be made, before the limitation is applicable. No one doubts the power of the legislature in the premises, and it does not seem to me that an intelligent construction of this language can leave a doubt as to its meaning. It is unreasonable to urge that a strict rendering of this language might work a hardship upon abutting owners. The act takes nothing away from them. All that they had previously parted with they received full compensation for. If abutting owners desired to make further improvements, which might be affected by a new grade of the street, they could compel the "establishment" of a grade, and a "record thereof," and save to the taxpayers of the municipality the expense of compensating them for damages sustained by the abutting owner in building or improving regardless of an established and recorded grade. The charter imposes this duty upon the municipality, and the courts can compel its discharge. So far as the plaintiff in this case is concerned, there is no hardship apparent resulting from the change from township jurisdiction to municipal. She has made no improvements since the change. She simply here asserts a claim to new property rights in the street, and points out this clause in the charter as the sole grounds of her claim. As to her, surely the court cannot be moved to torture the plain rendering of this clause to work out a compensation in her behalf, to which she is not in law or equity entitled.

In June, 1890,—some three months after the city charter was passed taking in Kingsboro avenue,—the common council passed a resolution requiring abutting owners to construct sidewalks along various streets. Among them Kingsboro avenue is mentioned. But these sidewalks were required to be constructed "in accordance with the grades now established or to be established for said streets and avenues, respectively," but no notice to owners was given, nor did the city cause the walks to be built. I do not think this can be regarded as a recognition by the city of a grade "established" on Kingsboro avenue. On the 19th of February, 1894, the common council took action as follows:

"Alderman Gross, of the committee on streets, presented a profile of Kingsboro avenue, prepared by the committee, and moved that the grade for Kingsboro avenue from Green avenue to First avenue be adopted as shown in the profile. Motion carried."

This includes the portion of the avenue passing the plaintiff's premises, and appears to be the first official recognition and record of a grade upon this avenue, and is a sufficient "establishment" of such grade to give notice to abutting owners. The profile clearly indicates the line of the street grade,—both the surface line of the then road and the line of the established grade. This grade line does not appear to have been subsequently changed, and to this grade line indicated in this profile the cutting in front of plaintiff's premises now complained of seems to have been done. No grading, however, on this avenue, was done prior to the passage by the common council on April 13, 1897, of the following resolutions:

"Resolved, that the grade on Kingsboro avenue from First avenue to E. Fulton street, as shown on a profile prepared by the city, be adopted. Resolved, that the street lines and curb lines on Kingsboro avenue between Green avenue and E. Fulton street, as shown on map made by the city engineer, and filed with the city clerk, be adopted."

These resolutions did not change the grade adopted on February 19, 1894, and shortly afterwards the street was graded to conform to such profile, and this grading is the grievance of which plaintiff complains. It cannot be reasonably claimed, where the right to change the surface of a road exists in the public, and it has been transferred from the town authorities to municipal by act of the legislature, that the right cannot be exercised after the municipality acquires jurisdiction, whatever hardship may ensue to the abutting owner. There appears to have been no unreasonable delay here in exercising the right. No one, least of all the plaintiff, was misled to their injury. Presumably the grade was established as soon as the abutting owners requested, or the needs of the locality demanded. I see nothing in this case warranting a finding that the grade had been established by user, and nothing which ought to work an estoppel upon the municipality, and nothing in the case which in law or equity can entitle plaintiff to another compensation. The work was done by lawful authority, and no property right of plaintiff was invaded. The action should be dismissed, with costs, and judgment is so directed.

Action dismissed, with costs.